IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MEDICIS PHARMACEUTICAL CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No.  10-1099 (SLR) |
| NYCOMED U.S. INC., | ) ) | |
| Defendant. | ) | |

**MEDICIS' ANSWERING BRIEF IN OPPOSITION
TO NYCOMED'S MOTION TO TRANSFER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
jtigan@mnat.com

OF COUNSEL:

Andrew M. Berdon
Robert B. Wilson
James E. Baker
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010-1601
(212) 849-7000

March 18, 2011

*Attorneys for Medicis Pharmaceutical
Corporation*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      NATURE AND STAGE OF PROCEEDINGS ........................................................1

II.     SUMMARY OF ARGUMENT ...............................................................................1

III.    THE HATCH-WAXMAN ACT .............................................................................3

IV.     STATEMENT OF FACTS ......................................................................................4

V.      ARGUMENT ...........................................................................................................7

        A.      Medicis' Choice Of Forum Is Paramount ...................................................8

        B.      None Of The Other Factors Outweighs Medicis' Choice Of Forum .....................12

                1.      Nycomed's "Home Turf" Argument Ignores Medicis' Connection
                        To Delaware ...................................................................................12

                2.      Nycomed's "Operative Facts" Argument Should Be Given Little
                        Weight .............................................................................................14

                3.      The Convenience Of The Parties And Witnesses Does Not Favor
                        Transfer ...........................................................................................15

VI.     CONCLUSION ......................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*Abbott Labs. v. Mylan Pharms., Inc.*,
    No. 05-6561, 2006 WL 850916 (N.D. Ill. Mar. 28, 2006) ...........................................9, 10, 11

*Academisch Ziekenhuis Leide v. CardioMEMS, Inc.*,
    No. 10-1127-BMS, 2011 U.S. Dist. LEXIS 23833 (D. Del. Mar. 9, 2011) ..........................13

*Boston Scientific Corp. v. Johnson & Johnson Inc.*,
    532 F. Supp. 2d 648 (D. Del. 2008)...................................................................................12, 15

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
    693 F. Supp. 2d 409 (D. Del. 2010)...........................................................................8, 9, 10, 11

*Downing v. Globe Direct LLC*,
    No. 09-693-JAP, 2010 WL 2560054 (D. Del. Jun. 18, 2010) ...............................................13

*Exxon Mobil Corp. v. Saudi Basic Indus.*,
    544 U.S. 280 (2005)..................................................................................................................8

*ICU Med., Inc. v. Rymed Techs., Inc.*,
    No. 07-468-JJF, 2008 U.S. Dist. LEXIS 4983 (D. Del. Jan. 23, 2008)..................................12

*Inter-City Prods. Corp. v. Ins. Co. of N. Am.*,
    No. 90-717-SLR, 1993 WL 18948 (D. Del. Jan. 26, 1993)....................................................13

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995).........................................................................................................7

*Lucent Techs. v. Aspect Telcoms. Corp.*,
    No. 97-1618, 1997 U.S. Dist. LEXIS 12811 (E.D. Pa. Aug. 20, 1997) ................................14

*Magsil Corp. v. Seagate Tech.*,
    No. 08-940, 2009 U.S. Dist. LEXIS 37511 (D. Del. Apr. 30, 2009)......................................13

*Oracle Corp. v. EpicRealm Licensing, LP*,
    Nos. 06-414, -495-SLR, 2007 U.S. Dist. LEXIS 21095 (D. Del. Mar. 26, 2007)...................8

*Pfizer Inc. v. Apotex Inc.*,
    640 F. Supp. 2d 1006 (N.D. Ill. 2009) ...........................................................................4, 9, 10

*Pfizer Inc. v. Sandoz Inc.*,
    No. 09-742-JJF, 2010 WL 256548 (D. Del. Jan. 20, 2010)...........................................*passim*

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970)........................................................................................................8

*Stratos Lightwave, Inc. v. E2O Commc'ns, Inc.*,
    No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653 (D. Del. Mar. 26, 2002)................................13

*Tuff-Torq Corp. v. Hydro-Gear Ltd. P'ship*,
   882 F. Supp. 359 (D. Del. 1994)..........................................................................12

*Turn of the Century Solution, L.P. v. Int'l Rectifier Corp.*,
   No. 05-816, 2006 U.S. Dist. LEXIS 39893 (D. Del. June 16, 2006)......................12

*Union Pac. R.R. Co. v. Dep't of Revenue*,
   920 F.2d 581 (9th Cir. 1990) .................................................................................8

*Virgin Wireless, Inc. v. Virgin Enters. Ltd.*,
   201 F. Supp. 2d 294 (D. Del. 2002)......................................................................13

## <u>Statutes</u>

21 U.S.C. § 355....................................................................................................*passim*

28 U.S.C. § 1404(a) ........................................................................................................7

## I.   NATURE AND STAGE OF PROCEEDINGS

On February 15, 2011, Defendant Nycomed U.S. Inc. ("Nycomed") filed a Motion to Transfer Venue to the Southern District of New York.  (D.I. 7.)  This is Medicis Pharmaceutical Corporation's ("Medicis") answering brief in opposition to that motion.

## II.   SUMMARY OF ARGUMENT

This action should proceed in Delaware.  On December 15, 2010, Medicis filed suit in this Court against Nycomed for infringement of United States Patent No. 7,794,738 ("the '738 patent").  (D.I. 1.)  Although the '738 patent is related to the patents-in-suit in another case pending before this Court (C.A. No. 10-419 (SLR), "the parallel Delaware action"), this is a stand-alone case filed almost seven months after the pending Delaware action.  Nycomed has not contested personal jurisdiction, and there is no reason why this case should not proceed to discovery and trial.   There is nothing unique about this case that requires transfer.   The underlying facts are exactly the same as the myriad other cases filed in this Court under the Drug Price Competition and Patent Term Restoration Act of 1984 ("the Hatch-Waxman Act").  Nycomed is simply using this motion in an attempt to slow down the proceedings in Delaware, thereby bolstering its argument that this case should be transferred to New York.

First and foremost, Medicis' preferred forum for this case is Delaware.  As such, its choice should be accorded great deference.  Nycomed argues that Medicis' decision to file a related action in New York "calls into question" its preference for Delaware.  That is simply not true.  As Nycomed knows, Medicis filed the New York action solely as a protective measure in the event Nycomed challenged personal jurisdiction in the pending Delaware action.  Indeed, Medicis agreed to dismiss the New York action if Nycomed would consent to jurisdiction in Delaware.  Nycomed never responded to Medicis' proposal.  Instead, Nycomed answered the complaint in New York without ever being served.  Thus, it appears that Nycomed's plan is to

accelerate the pace of litigation in New York and stall progress in Delaware in an attempt to sway this Court to grant its motions to transfer. Nycomed's strategy, however, usurps Medicis' right to choose the forum in which to protect its patent rights and upsets the careful balance created by the Hatch-Waxman Act.

Second, contrary to Nycomed's assertions, this is not a case where Medicis has no legitimate reason for bringing this action in Delaware. Medicis is incorporated in Delaware and often relies on the Delaware courts to adjudicate its claims. Further, Medicis sells Vanos® in Delaware; Nycomed is subject to personal jurisdiction in Delaware; and Medicis has reason to believe that, if approved by the FDA before the expiration of Medicis' patents, Nycomed's generic product will infringe the '738 patent in Delaware. All of these are legitimate reasons to bring this action in Delaware.

Third, the convenience of the parties and witnesses does not favor transfer. As Nycomed knows, the practical reality of contemporary litigation is that witnesses and evidence can be made available in almost any jurisdiction. Nycomed's argument that the Southern District of New York is somehow more convenient than Delaware has no basis. The locations for depositions and document production will be the same regardless of where this case goes forward. The only possible difference between litigating in one forum versus the other is the availability of witnesses at trial. Nycomed has made no showing, however, that any of its witnesses would be available for trial in New York, but not in Delaware.

Finally, none of the public interest factors weighs in favor of transfer. Nycomed relies heavily on the fact that a scheduling conference had been set in the New York action and, therefore, that the New York action is "already underway." (Nycomed Br. at 8 and 12.) That should not be a relevant consideration in this Court's analysis. At the recent scheduling

conference in the New York action, the court declined to enter a schedule and instead informed the parties that the case was being reassigned.  Thus, contrary to Nycomed's assertions, the New York action is no further along than this case in terms of scheduling.

For all these reasons, Medicis respectfully requests that the Court deny Nycomed's Motion to Transfer.

## III.   THE HATCH-WAXMAN ACT

In part, the outcome of the pending motion turns on an understanding of the Hatch-Waxman Act and how it influences the choice of forum in pharmaceutical patent litigations.  Thus, a brief discussion of the relevant portions of the statute is provided below.

The Hatch-Waxman Act provides a statutory scheme for expedited approval of generic drugs by balancing the interests of the brand name and generic drug companies.  Under the Hatch-Waxman Act, a generic pharmaceutical company seeking to market a generic version of a brand name drug is not required to re-establish the safety and efficacy of the drug in question.  Rather, it is allowed to "piggyback" on the efforts of the brand company by relying on the extensive data submitted with the New Drug Application ("NDA") for the brand name drug.  All the generic manufacturer must show is that the generic drug is bioequivalent to the drug in the NDA.  *See* 21 U.S.C. § 355(j)(2)(A).

In return, the brand company is allowed to institute a patent action during the ANDA approval process before the generic company launches its infringing product into the market.  If the generic company seeks to enter the market before expiration of the patents covering the branded drug, it must file a certification ("Paragraph IV Certification") setting forth in detail its belief that the patents are either invalid, unenforceable, or not infringed.  *See* 21 U.S.C. § 355(j)(2)(A)(vii)(IV).  The Paragraph IV Certification itself constitutes an act of infringement, triggering the branded company's right to sue.  *See* 35 U.S.C. § 271(e)(2)(A).

Pursuant to the Hatch-Waxman Act, the patentee/NDA holder is required to file suit within 45 days of receipt of notification of the ANDA and Paragraph IV Certification to receive the benefit of an automatic 30-month stay of approval of the generic company's ANDA. 21 U.S.C. § 355(c)(3)(C). If the branded company sues within 45 days of receiving notice of the Paragraph IV Certification, the FDA is enjoined from approving the ANDA for a period of 30 months or until a court decision in favor of the generic company, whichever is earlier. *See* 21 U.S.C. § 355(j)(5)(B)(iii). This 30-month stay is critical in preserving the patent-holder's rights while giving the court time to resolve the patent dispute. *See Pfizer Inc. v. Sandoz Inc.*, No. 09-742-JJF, 2010 WL 256548, at *3 (D. Del. Jan. 20, 2010) (noting that when 30-month stay is jeopardized, plaintiff risks losing patent protection).

The 45-day window is a strict time limit. *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1010 (N.D. Ill. 2009). If suit is not filed within 45 days, or jurisdiction is not retained in the forum in which the ANDA applicant is sued, the patentee/NDA holder risks losing the automatic 30-month stay and must seek injunctive relief to prevent the generic company from launching its generic product if FDA approval occurs during the course of litigation.

## IV.   STATEMENT OF FACTS

Medicis is the holder of NDA No. 21-758 for Vanos® (fluocinonide) 0.1% cream ("Vanos®"), approved by the FDA for the treatment of psoriasis, dermatitis, and corticosteroid responsive dermatoses. Medicis is also the owner of United States Patent Nos. 6,765,001 ("the '001 patent"); 7,220,424 ("the '424 patent"); 7,217,422 ("the '422 patent"), and the '738 patent, all entitled "Compositions and Methods For Enhancing Corticosteroid Delivery." Each of these patents covers a composition or method for enhancing the potency of fluocinonide hydrochloride, the active ingredient in Vanos®. The '001, '424, and '738 patents are listed in the

4

FDA's publication *Approved Drug Products with Therapeutic Equivalence Evaluations* ("the Orange Book") for Vanos®.

Pursuant to 21 U.S.C. § 355(j), Nycomed filed ANDA No. 20-735 seeking FDA approval to market and sell a generic version of Vanos® before the expiration of the '001, '424, '422 and '738 patents. Pursuant to 21 U.S.C. § 355(j)(2)(vii)(IV), Nycomed included in its ANDA a Paragraph IV Certification alleging that the '001 and '424 patents will not be infringed by the commercial manufacture, use, or sale of Nycomed's generic product. On or about April 7, 2010, pursuant to 21 U.S.C. § 355(j)(2)(B), Nycomed sent a letter ("the Notice Letter") informing Medicis that Nycomed had filed ANDA No. 20-735 with Paragraph IV Certifications against the '001 and '424 patents.

On May 19, 2010, Medicis filed a complaint against Nycomed for infringement of the '001, '424, and '422 patents in this Court (C.A. No. 10-419-SLR, "the pending Delaware action"). Medicis included a count for infringement of all three patents under § 271(e)(2)(A) based on the filing of ANDA No. 20-735 and its accompanying Paragraph IV Certifications with the FDA. Medicis also included declaratory judgment counts for actual infringement of all three patents under §§ 271(a)-(c). On June 4, 2010, Medicis requested and Nycomed agreed to waiver of service of the complaint in the pending Delaware action.

Also on May 19, 2010, Medicis filed a second complaint with identical causes of action in the Southern District of New York (C.A. No. 10-4140-LAK, "the New York action"). Medicis did not serve or request waiver of service from Nycomed in the New York action. Instead, Medicis intended to withhold service of the complaint in that action until it knew whether Nycomed would challenge personal jurisdiction in Delaware. If Nycomed did not challenge personal jurisdiction, Medicis would voluntarily dismiss the New York action and

proceed in Delaware, Medicis' preferred forum.  In common parlance, the New York action is known as a "protective action."

In June 2010, Nycomed requested that Medicis dismiss either the pending Delaware action or the New York action so that the case could proceed in a single forum.  (*See* Ex. 1.)  In response, Medicis agreed to withdraw the New York complaint if Nycomed would consent to personal jurisdiction in Delaware.  (*See id.*)  Nycomed did not respond to Medicis' offer.

Instead, on August 3, 2010, Nycomed answered the complaint in the New York action without being served.  (C.A. No. 10-4140 (S.D.N.Y.), D.I. 19.)  On the same day, Nycomed filed a motion to transfer the pending Delaware action to New York.  (C.A. No. 10-419-SLR, D.I. 6.)  Nycomed's motion to transfer the pending Delaware action is currently before this Court.  In addition, Nycomed filed substantially identical motions to dismiss several, but not all, of the infringement claims in both the pending Delaware action and the New York action.  (*See* C.A. No. 10-419-SLR (D. Del.), D.I. 10; C.A. No. 10-4140 (S.D.N.Y.), D.I. 6.)  On December 15, 2010, Medicis opposed all of Nycomed's motions.  (C.A. No. 10-419-SLR (D. Del.), D.I. 20, 21; C.A. No. 10-4140 (S.D.N.Y.), D.I. 15.)  On January 19, 2011, Nycomed stipulated to withdrawal of its motions to dismiss.  (C.A. No. 10-419-SLR (D. Del.), D.I. 24; C.A. No. 10-4140 (S.D.N.Y.), D.I. 25.)

On December 15, 2010, Medicis also filed the complaint in this case against Nycomed for infringement of the '738 patent.  (D.I. 1.)  In the complaint, Medicis included similar counts for infringement under §§ 271(e)(2)(A) and (a)-(c) as were included in the pending Delaware and

New York actions. On February 15, 2011, Nycomed filed motions to dismiss and transfer this action.[1] (D.I. 7, 11.)

## V.    ARGUMENT

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). *See also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). "In determining whether to transfer a case pursuant to § 1404(a), courts in the Third Circuit apply the public and private interest factors outlined in [*Jumara*]." *Pfizer Inc. v. Sandoz Inc.*, No. 09-742-JJF, 2010 WL 256548, at *3 (D. Del. Jan. 20, 2010). "Courts consider the following private interests: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records, again, only to the extent that they may not be available in one of the fora." *Id.* "Courts consider the following public interests: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law." *Id.* A transfer should be denied "if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Id.*

---

[1]    In its motion to dismiss this action, Nycomed makes very similar arguments to those made in its earlier motions to dismiss the pending Delaware and New York actions. As described above, Nycomed stipulated to withdraw the earlier motions. Nevertheless, Nycomed is pursuing virtually the same arguments in this case. Medicis is filing its opposition to Nycomed's pending motion to dismiss concurrently herewith.

The private and public factors to be addressed on a motion to transfer weigh heavily in favor of Medicis. First, Medicis' choice of Delaware as its selected litigation forum is entitled to great deference. Further, none of Nycomed's arguments with respect to the other private and public factors shifts the balance in favor of New York.

## A.   Medicis' Choice Of Forum Is Paramount

"Generally, a plaintiff's choice of forum is entitled to paramount consideration, and should not be lightly disturbed." *Sandoz*, 2010 WL 256548 at *3 (internal quotation omitted). *See also In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 693 F. Supp. 2d 409, 421 (D. Del. 2010) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed.") (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail." *Oracle Corp. v. EpicRealm Licensing, LP*, Nos. 06-414, -495-SLR, 2007 U.S. Dist. LEXIS 21095, at *7 (D. Del. Mar. 26, 2007) (emphasis added). Here, there is no reason to depart from the general rule that, as the plaintiff, Medicis is entitled to its choice of forum.

Nycomed argues that Medicis' choice of Delaware should be given no deference because its decision to file the New York action "calls into question any attempt it might make now to argue that it 'prefers' this district." (Nycomed Br. (D.I. 8) at 9.) That is not the law. Medicis should not lose its forum choice merely because it took the prudent measure of filing a protective action in New York.

The United States Supreme Court has recognized that, in certain instances, the filing of a "protective suit" is necessary and appropriate to preserve the interests of the plaintiff. *See Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 294 n.9 (2005) ("There is nothing necessarily inappropriate . . . about filing a protective action."); *Union Pac. R.R. Co. v. Dep't of Revenue*,

920 F.2d 581, 584 & n.9 (9th Cir. 1990) (recognizing that the railroad company had filed protective actions in state court to prevent expiration of the state statute of limitations). Hatch-Waxman litigation is no different. Given the ambiguity in establishing personal jurisdiction in some instances, plaintiffs in Hatch-Waxman cases are well-advised to file protective suits. Indeed, the practice of filing protective suits in Hatch-Waxman cases has become commonplace and has been endorsed by several courts, including this one. *See Sandoz*, 2010 WL 256548 at *3; *Cyclobenzaprine*, 693 F. Supp. 2d at 422 n.19; *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1010 (N.D. Ill. 2009); *Abbott Labs. v. Mylan Pharms., Inc.*, No. 05-6561, 2006 WL 850916, at *8 (N.D. Ill. Mar. 28, 2006).

For example, in *Abbot Labs*, the court faced the same situation as here. After receiving notice of Sandoz' ANDA seeking approval to market and sell a generic version of the drug Depakote®, plaintiff Abbott filed suit in the Northern District of Illinois as well as a protective suit in the Northern District of West Virginia, where defendant Mylan had its corporate headquarters. Making the same arguments as Nycomed makes here, Mylan moved to transfer pursuant to 28 U.S.C. § 1404(a). The Court denied the motion. Although the court did not need to reach the issue, it recognized the dilemma faced by Hatch-Waxman plaintiffs:

> [T]he Court cannot fault Abbott for its litigation strategy in the face of an ambiguous statute that remains devoid of court interpretation. Abbott does not seek double recovery or have any desire to litigate pending suits, and has requested a stay in the suit pending in the Northern District of West Virginia. Patent holders have a strict statutory 45-day window in which to file suit after the patent holder receives notice that a generic company has filed an ANDA. The statute is silent, and the courts have not clarified, whether the patent holder loses its right to sue for patent infringement in the event its suit is dismissed for lack of personal jurisdiction after the 45-day period has expired. . . . Therefore, patent holders are stuck between a jurisdictional rock and hard place: file suit in the forum of choice but risk losing patent protection if the suit is dismissed for personal jurisdiction, or file

> suit in the only known safe forum and incur all the inconvenience
> of litigating the matter in a distant location.

*Abbott*, 2006 WL 850916 at *8 (emphasis added).

In a subsequent case, the same court again recognized the need for filing protective suits "in view of the apparent conundrum that parties in Pfizer's position otherwise may face." *Apotex*, 640 F. Supp. 2d at 1010. Further, "[c]ourts in factually similar cases have likewise refused to find 'bad faith or forum shopping on the part of Plaintiff' where 'Plaintiff filed the duplicative actions only because of the extraordinary time limit placed on the filing of suits under the Hatch-Waxman Act' and Plaintiff's belief 'that Defendant would challenge personal jurisdiction in Plaintiff's preferred forum.'" *Id.* at 1010 n.4 (citations omitted).

Facing the same situation, this Court has followed *Abbott* and *Apotex*. For example, in *Sandoz*, after receiving notice of Sandoz' ANDA seeking approval for a generic version of the drug Caduet®, Pfizer filed suit in Delaware as well as a protective suit in Colorado, where Sandoz was incorporated and had its largest manufacturing facility. Denying Sandoz' motion to transfer, the Court discussed the dilemma faced by Hatch-Waxman plaintiffs:

> The statute is silent on whether a patent holder loses its right to sue if its suit is dismissed for lack of personal jurisdiction after the 45-day window has expired. Thus, at least one court has recognized that the ambiguities in the Hatch-Waxman Act put patent holders "between a jurisdictional rock and a hard place: file suit in the forum of choice but risk losing patent protection if the suit is dismissed for personal jurisdiction, or file suit in the only known safe forum . . ." *Abbott Labs.*, 2006 WL 850916, at *8. As a result, patent holders are apparently filing "protective" ANDA suits with increasing frequency. *See id.* Such is the case here, where Plaintiffs filed the Delaware Action and the "protective" Colorado Action a day later.

*Sandoz*, 2010 WL 256548 at *3. Further, the Court confirmed that "[n]umerous courts have declined to find that a plaintiff acts in bad faith or engages in forum shopping when it files a protective suit against an ANDA filer." *Id.* (citations omitted).

Likewise, in *Cyclobenzaprine*, the brand name company filed suit in Delaware as well as two protective suits in the Central District of California. Denying the defendant's motion to transfer under § 1404(a), this Court again explained:

> With respect to the "strict 45-day window in which to file suit," the [Hatch-Waxman] Act is "silent as to whether the patent holder loses its right to sue for patent infringement in the event its suit is dismissed for lack of personal jurisdiction after the 45-day period has expired." *Abbott Labs.*, 2006 WL 850916, at *8. The Court will not infer that plaintiffs have made a "choice" as to venue when prudence counsels the need for such protective measures to preserve rights in light of an ambiguous statute.

*Cyclobenzaprine*, 693 F. Supp. 2d at 422 n.19.

Like *Sandoz* and *Cyclobenzaprine*, this Court should reject Nycomed's argument that Medicis' protective action in New York outweighs its preference to litigate this action in Delaware. After receiving notice of Nycomed's ANDA, Medicis filed the pending Delaware action within the 45-day period dictated by the Hatch-Waxman Act. Anticipating that Nycomed might contest personal jurisdiction in Delaware, Medicis filed a second protective action in the Southern District of New York. Medicis, however, never served the New York complaint. Instead, Medicis intended the New York action to serve as a "placeholder" until Nycomed responded to the complaint in the pending Delaware action, and Medicis was able to determine whether Nycomed would challenge personal jurisdiction. Now that Nycomed has consented to personal jurisdiction in the pending Delaware action, all of these cases are ready to proceed in Delaware. If this Court denies Nycomed's motions to transfer, Medicis will move to dismiss the New York action immediately. If Nycomed truly wishes to expedite this litigation – as it is required to do under the Hatch-Waxman Act – it should readily agree to dismiss the related New York action and proceed here.

### B.   None Of The Other Factors Outweighs Medicis' Choice Of Forum

Nycomed makes several other arguments in an attempt to downplay the black letter law that a plaintiff's choice of forum is the "paramount consideration" and "should not be lightly disturbed." *See Cyclobenzaprine*, 693 F. Supp. 2d at 421. None of these arguments outweighs Medicis' right to choose its forum.

### 1.   Nycomed's "Home Turf" Argument Ignores Medicis' Connection To Delaware

First, Nycomed argues that Medicis' choice of forum is entitled to no deference because Delaware is not its "home turf." (Nycomed Br. at 7.) Nycomed is wrong. It is axiomatic that "[t]he deference afforded plaintiff's choice of forum will apply so long as plaintiff has selected the forum for some legitimate reason." *Turn of the Century Solution, L.P. v. Int'l Rectifier Corp.*, No. 05-816-SLR, 2006 U.S. Dist. LEXIS 39893, at *4 (D. Del. June 16, 2006). Thus, even when Delaware is not the plaintiff's "home turf," the plaintiff's choice to litigate in Delaware is given deference so long as there is some legitimate reason for the choice. *Tuff-Torq Corp. v. Hydro-Gear Ltd. P'ship*, 882 F. Supp. 359, 362 (D. Del. 1994).

Contrary to Nycomed's assertions, this is not a case where Medicis has no legitimate reason for bringing this action in Delaware. First, Medicis is incorporated in Delaware and relies often on the Delaware courts to adjudicate its claims.[2] *See Boston Scientific Corp. v. Johnson & Johnson Inc.*, 532 F. Supp. 2d 648, 655 (D. Del. 2008) ("[A] corporation's decision to incorporate in a particular state is a rational and legitimate reason to litigate in that state."); *ICU Med., Inc. v. Rymed Techs., Inc.*, No. 07-468-JJF, 2008 U.S. Dist. LEXIS 4983, at *7-8 (D. Del. Jan. 23, 2008) ("The Court concludes that [plaintiff's] decision to litigate in Delaware is entitled

---

[2]   *See, e.g., Medicis Pharm. Corp. v. Mylan Inc.*, C.A. No. 09-0033-LPS; *Medicis Pharm. Corp. v. Ranbaxy Inc.*, C.A. No. 09-0435-JJF.

to deference because although its principal place of business is in California, it is incorporated in Delaware."). Further, Medicis sells Vanos® in Delaware; Nycomed is subject to personal jurisdiction in Delaware; and Medicis has reason to believe that, if approved before the expiration of the '001, '424, '422, and '738 patents, Nycomed's generic product will infringe Medicis' patents by being marketed and sold in Delaware. All of these are legitimate reasons to bring this action in Delaware. None of the cases Nycomed cites holds otherwise. *See Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 300 (D. Del. 2002); *Downing v. Globe Direct LLC*, No. 09-693-JAP, 2010 WL 2560054, at *3 (D. Del. Jun. 18, 2010); *Inter-City Prods. Corp. v. Ins. Co. of N. Am.*, No. 90-717-SLR, 1993 WL 18948, at *1-2 (D. Del. Jan. 26, 1993).

For example, although the *Virgin Wireless* court held that the plaintiff's choice of Delaware was entitled to little weight, the plaintiff in that case was not incorporated in Delaware. *See Virgin Wireless, Inc.*, 201 F. Supp. 2d at 300. Likewise, in *Downing*, the plaintiff was an individual who resided solely in Massachusetts and had no connection to the forum state. *See Downing*, 2010 WL 2560054 at *3. *Inter-City* is also distinguishable because the forum state had absolutely no connection with the subject matter of the lawsuit. *See Inter-City Prods. Corp.*, 1993 WL 18948 at *1-2. Here, on the other hand, Medicis is a Delaware corporation, and the citizens of this forum have a direct interest in the subject matter of the lawsuit, *i.e.* Vanos®, Nycomed's proposed generic product, and infringement of the '738 patent.[3]

---

[3]   In the same vein, Nycomed argues that transfer is justified because New York has a greater local interest in this litigation. (Nycomed Br. at 13). Because this is a patent action, however, New York has no more of a local interest in the subject matter of this litigation than Delaware. *Academisch Ziekenhuis Leide v. CardioMEMS, Inc.*, No. 10-1127-BMS, 2011 U.S. Dist. LEXIS 23833, at *13 (D. Del. Mar. 9, 2011) ("As to deciding local disputes at home, this is a patent infringement case and thus does not implicate local concerns."); *Magsil Corp. v. Seagate Tech.*, No. 08-940, 2009 U.S. Dist. LEXIS 37511, at *8 (D. Del. Apr. 30, 2009) (observing that individual states have no (continued...)

## 2. Nycomed's "Operative Facts" Argument Should Be Given Little Weight

Nycomed also argues that this case should proceed in New York because the "operative facts" underlying Medicis' claims of infringement allegedly arose in that state. Given the practical reality that pharmaceutical products are sold nationwide, however, this factor should be given little weight in the context of a Hatch-Waxman case, and certainly does not outweigh Medicis' right to choose its forum.

This is a Hatch-Waxman case premised on Nycomed's artificial act of infringement under § 271(e)(2) and future infringement under §§ 271(a)-(c). It matters little where the preparation and filing of Nycomed's ANDA took place. Further, while it may be true that the design and development of the allegedly infringing product occurred in New York, it is equally true that Nycomed's generic product, if approved, will infringe the '738 patent in Delaware. Moreover, Nycomed's reliance on the so-called "center of gravity" test for determining the appropriate forum for patent cases is misplaced. Courts have made clear that the "center of gravity" is "only one factor to be considered in addition to those already enumerated, and is to be given substantial weight only where the plaintiff has engaged in forum shopping." *Lucent Techs. v. Aspect Telcoms. Corp.*, No. 97-1618, 1997 U.S. Dist. LEXIS 12811, at *8 (E.D. Pa. Aug. 20, 1997). That is not the case at hand. Here, Medicis has chosen to sue in Delaware, where it is incorporated, sells the drug product at issue, and faces actual infringement of its patents. Nycomed should not be allowed to usurp Medicis' choice of forum simply because it assembled its ANDA in New York.

---

distinct public interest in a patent infringement cases); *Stratos Lightwave, Inc. v. E2O Commc'ns, Inc.*, No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653, at *8 (D. Del. Mar. 26, 2002) ("Patent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy.").

In fact, Nycomed's assertion that its motion is rooted in the need to be close to the documents and information at the "center" of this case is belied by the location of its own business. Although Nycomed argues that its preferred forum is the Southern District of New York (Nycomed Br. at 9), Nycomed's place of business is actually located in the Eastern District of New York. If the locale of documents and information is truly the motivation for Nycomed's motion, then Nycomed should be seeking transfer to the Eastern District of New York, not the Southern District. In reality, Nycomed's motion is not about convenience. It is about Nycomed's desire to choose the forum for this case.

### 3. The Convenience Of The Parties And Witnesses Does Not Favor Transfer

The convenience of the parties and witnesses also does not favor transfer. This factor may only be considered "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Boston Scientific*, 532 F. Supp. 2d at 654. Likewise, the availability of evidence is a factor "similarly limited to the extent that [it cannot] be produced in the alternative forum." *Id.* Here, Nycomed has not identified a single witness that will be unavailable for trial in Delaware. And Nycomed does not contend that there is evidence that can be produced in New York, but not in Delaware. This is not surprising given the practical realities of modern-day litigation. As Nycomed knows, witnesses and evidence can be made available in almost any jurisdiction.

Finally, Nycomed relies heavily on the fact that a scheduling conference had been set in the New York action. According to Nycomed, this weighs in favor of transfer because the New York action is "already underway." (Nycomed Br. at 8, 12.) The scheduling of a case management conference in the New York action should be given little weight in the Court's analysis. In any event, at the recent case management conference in the New York action, the

court declined to enter a schedule and instead informed the parties that the case was being reassigned. Thus, the New York action is no further along that the Delaware actions in terms of scheduling.

In sum, Nycomed's procedural maneuvering is a thinly veiled attempt to usurp Medicis' right to choose its forum. Perhaps the best evidence of Nycomed's true motives is its reaction to Medicis' request to consent to jurisdiction in Delaware. Before responding to either complaint in the related New York and pending Delaware actions, counsel for Nycomed contacted counsel for Medicis concerning the two actions. (*See* Ex. 1.) In that email, counsel for Nycomed requested that Medicis "dismiss one of the suits . . . filed in New York or Delaware." (*Id.*) Counsel for Medicis responded that Medicis would withdraw the New York complaint "if Nycomed will agree to consent to jurisdiction in Delaware." (*Id.*) Nycomed, however, never responded. Instead, Nycomed answered the New York complaint even though it had never been served. Because the complaints in both actions are identical, there was no reason for Nycomed to answer in one jurisdiction and not the other. The only explanation for this maneuver is that Nycomed was attempting to set up an argument that the New York action is further along than the pending Delaware action. Now, Nycomed is using that very argument to support transfer of this case. (Nycomed Br. at 8, 12.)

## VI.   <u>CONCLUSION</u>

Nycomed has failed to identify any factor that weighs in favor of transferring this action to the Southern District of New York. Accordingly, Nycomed's Motion to Transfer should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
jtigan@mnat.com

*Attorneys for Medicis Pharmaceutical
Corporation*

OF COUNSEL:

Andrew M. Berdon
Robert B. Wilson
James E. Baker
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue – 22nd Floor
New York, NY  10010-1601
(212) 849-7000

March 18, 2011
4144529

17

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2011, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

> Jeffrey L. Moyer, Esquire
> Jason J. Rawnsley, Esquire
> RICHARDS, LAYTON & FINGER

I further certify that I caused copies of the foregoing document to be served on March 18, 2011, upon the following in the manner indicated:

Jeffrey L. Moyer, Esquire                           *VIA ELECTRONIC MAIL*
Jason J. Rawnsley, Esquire
RICHARDS, LAYTON & FINGER
One Rodney Square
920 North King Street
Wilmington, DE  19801

David B. Bassett, Esquire                           *VIA ELECTRONIC MAIL*
David A. Manspeizer, Esquire
Andrew B. Zoltan
Omar Khan
WILMER CUTLER PICKERING HALE & DORR LLP
399 Park Avenue
New York, NY  10022

Christine Duh
WILMER CUTLER PICKERING HALE & DORR LLP
950 Page Mill Road
Palo Alto, CA  94304

_____
Jeremy A. Tigan (#2881)