# EXHIBIT A

/IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MEDICIS PHARMACEUTICAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-419 (SLR) |
| | ) | |
| NYCOMED U.S. INC. and NYCOMED GMBH, | ) | |
| | ) | |
| Defendants. | ) | |

## MEDICIS' ANSWERING BRIEF IN OPPOSITION
## TO NYCOMED'S MOTION TO TRANSFER

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com

OF COUNSEL:

*Attorneys for Medicis Pharmaceutical*
*Corporation*

Andrew M. Berdon
Robert B. Wilson
James E. Baker
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue – 22nd Floor
New York, NY 10010-1601
(212) 849-7000

December 15, 2010

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

I.     NATURE AND STAGE OF PROCEEDINGS ............................................................ 1

II.    SUMMARY OF ARGUMENT ................................................................................. 1

III.   THE HATCH WAXMAN ACT .............................................................................. 2

IV.   STATEMENT OF FACTS ....................................................................................... 4

V.    ARGUMENT ............................................................................................................ 6

      A.    Medicis' Choice of Forum Is Paramount ............................................. 7

            1.    The New York Action Is a Protective Suit and Should Not Deprive
                  Medicis of Its Choice of Forum ............................................. 7

            2.    The Delaware Action Takes Precedence Under the First-Filed Rule ....... 12

            3.    None of Nycomed's Other Arguments Trumps Medicis' Right to
                  Choose Its Forum .................................................................. 13

      B.    The Private and Public Factors Weigh Heavily in Favor of Delaware ................ 14

VI.   CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Mylan Pharms., Inc.*,
2006 WL 850916 (N.D. Ill. Mar. 28, 2006) .................................................................. 8-9

*Ballard Med. Prods. v. Concord Labs., Inc.*,
700 F. Supp. 796 (D. Del. 1988) ............................................................................... 14

*Boston Scientific Corp. v. Johnson & Johnson, Inc.*,
532 F. Supp. 2d 648 (D. Del. 2008) ..................................................................... 12, 14

*Burke v. Quartey*,
969 F. Supp. 921 (D.N.J. 1997) ..................................................................................7

*CIBC World Markets, Inc. v. Deutsche Bank Securities, Inc.*,
309 F. Supp. 2d 637 (D.N.J. 2004) ..........................................................................13

*Crackau v. Lucent Technologies*,
2003 WL 22927231 (D.N.J. 2003).............................................................................13

*EEOC v. Univ. of Pa.*,
850 F.2d 969 (3d Cir. 1988) ....................................................................................12

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005) ..................................................................................................7

*Gov't of Virgin Islands v. Neadle*,
861 F. Supp. 1054 (M.D. Fl. 1994) ..............................................................................7

*In re Cyclobenzaprine*,
693 F. Supp. 2d 409 (D. Del. 2010) ..................................................................6, 8, 10

*Intervet, Inc. v. Merial Ltd.*,
655 F. Supp. 2d 131 (D.D.C. 2009) ...........................................................................12

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995) .................................................................................... 5-6

*Kahn v. Gen. Motors Corp.*,
889 F.2d 1078 (Fed. Cir. 1989).................................................................................12

*Market Transition Facility v. Twena*,
941 F. Supp. 462 (D.N.J. 1996) ..................................................................................7

*Pfizer Inc. v. Apotex Inc.*,
    640 F. Supp. 2d 1006 (N.D. Ill. 2009) ........................................................................3, 8-9

*Pfizer Inc. v. Sandoz Inc.*,
    2010 WL 256548 (D. Del. Jan. 20, 2010) ................................................................Passim

*Rhines v. Weber*,
    544 U.S. 269 (2005) ..............................................................................................................7

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970) ...................................................................................................7

*Smithkline Corp. v. Sterling Drug, Inc.*,
    406 F. Supp. 52 (D. Del. 1975) ..........................................................................................14

*Union Pacific R. Co. v. Dep't of Revenue*,
    920 F.2d 581 (9th Cir. 1990) ...............................................................................................8

*United States v. Secord*,
    43 F.3d 1469 (4th Cir. 1994) ...............................................................................................8

## RULES AND STATUTES

21 U.S.C. § 355(c)(3)(A) .............................................................................................................3

21 U.S.C. §355(j) .........................................................................................................................4

21 U.S.C. §355(j)(2)(vii)(IV) ......................................................................................................4

21 U.S.C. § 355(j)(2)(A)(vii)(IV) ...............................................................................................3

21 U.S.C. § 355(j)(5)(B)(iii) ........................................................................................................3

21 U.S.C. §(j)(2)(B) .....................................................................................................................4

28 U.S.C. §1404 ....................................................................................................................8, 10

28 U.S.C. §1404(a) ...................................................................................................................5-6

35 U.S.C. § 271(e)(2)(A) ..........................................................................................................3-5

## I.     NATURE AND STAGE OF PROCEEDINGS

On August 3, 2010, Defendant Nycomed U.S. Inc. ("Nycomed") filed a Motion to Transfer, or in the Alternative, Stay Proceedings. (D.I. 6).   This is Medicis Pharmaceutical Corporation's ("Medicis") answering brief in opposition to that motion.

## II.     SUMMARY OF ARGUMENT

This action should proceed in Delaware.  Medicis filed a second, identical lawsuit in New York solely as a protective measure in the event Nycomed challenged personal jurisdiction in Delaware.  Nycomed did not raise that defense, however, and this case may now proceed.

First and foremost, Medicis has no interest in litigating this case in two forums.  Medicis filed a second action in the Southern District of New York to protect its statutory right to a 30-month stay under the Drug Price Competition and Patent Term Restoration Act of 1984 ("the Hatch Waxman Act").   Indeed, Medicis agreed to dismiss the New York action if Nycomed would consent to personal jurisdiction in Delaware.  But Nycomed never responded to Medicis' proposal.  Instead, Nycomed answered the complaint in New York without ever being served. Thus, it appears that Nycomed's plan is to accelerate the pace of litigation in the New York action and stall progress in Delaware in an attempt to sway this Court to grant its motion to transfer.  Nycomed's strategy, however, usurps Medicis' right to choose the forum in which to protect its patent rights and upsets the careful balance created by the Hatch Waxman Act.

Second, the interests of justice favor litigating this case in Delaware.  The Delaware case is the first-filed action and Medicis' choice of forum.   It should take precedence.   Further, Delaware is the only venue where Medicis is asserting United States Patent No. 7,794,738 ("the '738 patent") against Nycomed.  Thus, even if the Court were to transfer the Delaware action to New York, the related case in Delaware involving the '738 patent will continue.  As such, keeping the Delaware action in this Court will conserve judicial and party resources.  Otherwise,

there will be a wasteful duplication of efforts if two courts are required to study the science and technology of the patents-in-suit, and for the parties to engage in duplicative discovery, motion practice, and trial proceedings. Further, keeping the case in Delaware alleviates the potential for inconsistent rulings.

Finally, the convenience of the parties and witnesses does not favor transfer to New York. As Nycomed knows, the practical reality of contemporary litigation is that witnesses and evidence can be made available in almost any jurisdiction. Nycomed's argument that the Southern District of New York is somehow more convenient than Delaware has no basis. The locations for depositions and document production will be the same regardless of where this case goes forward. The only possible difference between litigating in one forum versus the other is the availability of witnesses at trial. Nycomed, however, has made no showing that any of its witnesses would be available for trial in New York, but not Delaware.

For all these reasons, Medicis respectfully requests that the Court deny Nycomed's Motion to Transfer.

## III.  THE HATCH WAXMAN ACT

In part, the outcome of the pending motion turns on an understanding of the Hatch Waxman Act and how it influences the choice of forum in pharmaceutical patent litigations. Thus, a brief discussion of the relevant portions of the statute is provided below.

The Hatch Waxman Act provides a statutory scheme for expedited approval of generic drugs by balancing the interests of the brand name and generic drug companies. Under the Hatch Waxman Act, a generic pharmaceutical company seeking to market a generic version of a brand name drug is not required to re-establish the safety and efficacy of the drug in question. Rather, it is allowed to "piggyback" on the efforts of the brand company by relying on the extensive data submitted with the New Drug Application ("NDA") for the brand name drug. All

the generic manufacturer must show is that the generic drug is bioequivalent to the drug in the NDA. *See* 21 U.S.C. §355(j)(2)(A).

In return, the brand company is allowed to institute a patent action during the ANDA approval process before the generic company launches its infringing product into the market. If the generic company seeks to enter the market before expiration of the patents covering the branded drug, it must file a certification ("Paragraph IV Certification") setting forth in detail its belief that the patents are either invalid, unenforceable, or not infringed. *See* 21 U.S.C. § 355(j)(2)(A)(vii)(IV). The Paragraph IV Certification itself constitutes an act of infringement, triggering the branded company's right to sue. *See* 35 U.S.C. § 271(e)(2)(A).

Pursuant to the Hatch Waxman Act, the patentee/NDA holder is required to file suit within 45 days of receipt of notification of the ANDA and Paragraph IV certification to receive the benefit of an automatic 30-month stay of approval of the generic company's ANDA application. 21 U.S.C. § 355(c)(3)(A). If the branded company sues within 45 days of receiving notice of the Paragraph IV Certification, the FDA is enjoined from approving the ANDA for a period of 30 months or until a court decision in favor of the generic company, whichever is earlier. *See* 21 U.S.C. § 355(j)(5)(B)(iii). This 30-month stay is critical in preserving the patent-holder's rights while giving the court time to resolve the patent dispute. *See Pfizer Inc. v. Sandoz Inc.*, 2010 WL 256548, at *3 (D. Del. Jan. 20, 2010) (noting that when 30-month stay is jeopardized, plaintiff risks losing patent protection).

The 45-day window is a strict time limit. *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1010 (N.D. Ill. 2009). If suit is not filed within 45 days, or jurisdiction is not retained in the forum in which the ANDA applicant is sued, the patentee/NDA holder risks losing the

automatic 30-month stay and must seek injunctive relief to prevent the generic company from launching its generic product if FDA approval occurs during the course of litigation.

## IV.    STATEMENT OF FACTS

Medicis is the holder of NDA No. 21-758 for Vanos® (fluocinonide) 0.1% cream ("Vanos®"), approved by the FDA for the treatment of psoriasis, dermatitis, and corticosteroid responsive dermatoses.  Medicis is also the owner of U.S. Patent Nos. 6,765,001 ("the '001 patent"); 7,220,424 ("the '424 patent"); 7,217,422 ("the '422 patent"), as well as the '738 patent, all entitled "Compositions and Methods For Enhancing Corticosteroid Delivery."  Each of these patents covers a composition or method for enhancing the potency of fluocinonide hydrochloride, the active ingredient in Vanos®.  The '001, '424, and '738 patents are listed in the FDA's publication *Approved Drug Products with Therapeutic Equivalence Evaluations* ("the Orange Book") for Vanos®.

Pursuant to 21 U.S.C. §355(j), Nycomed filed ANDA No. 20-735 seeking FDA approval to market and sale a generic version of Vanos® before the expiration of the '001, '424, '422 and '738 patents.  Pursuant to 21 U.S.C. §355(j)(2)(vii)(IV), Nycomed included in its ANDA a certification ("Paragraph IV Certification") alleging that the '001 and '424 patents will not be infringed by the commercial manufacture, use, or sale of Nycomed's generic product.  On or about April 7, 2010, pursuant to 21 U.S.C. §(j)(2)(B), Nycomed sent a letter ("the Notice Letter") informing Medicis that Nycomed had filed ANDA No. 20-735 with Paragraph IV Certifications against the '001 and '424 patents.

On May 19, 2010, Medicis filed a complaint against Nycomed for infringement of the '001, '424, and '422 patents in this Court.  Medicis included a count for infringement of all three patents under §271(e)(2)(A) based on the filing of ANDA No. 20-735 and its accompanying Paragraph IV Certifications with the FDA.  Medicis also included declaratory judgment counts

for actual infringement of all three patents under §§271(a)-(c).  On June 4, 2010, Medicis requested and Nycomed agreed to waiver of service of the Delaware complaint.

Also on May 19, 2010, Medicis filed a second complaint with identical causes of action in the Southern District of New York.  Medicis did not serve or request waiver of service from Nycomed in the New York action.  Instead, Medicis intended to withhold service of the complaint in that action until it knew whether Nycomed would challenge personal jurisdiction in Delaware.  If Nycomed did not challenge personal jurisdiction, Medicis would voluntarily dismiss the New York action and proceed in Delaware, Medicis' preferred forum.  In common parlance, the New York action is known as a "protective action."

In June 2010, Nycomed requested that Medicis dismiss either the Delaware or New York action so that the case could proceed in a single forum.  (*See* Exhibit 1, attached hereto).  In response, Medicis agreed to withdraw the New York complaint if Nycomed would consent to personal jurisdiction in Delaware.  (*See id.*).  Nycomed did not respond to Medicis' offer.

Instead, on August 3, 2010, Nycomed answered the complaint in the New York action without being served.  Nycomed also filed a motion to dismiss several, but not all, of the infringement claims in the New York action.  Specifically, Nycomed's motion seeks dismissal of the declaratory judgment counts under §§271(a)-(c) and the §271(e)(2)(A) count against the '422 patent.  Nycomed's motion does not seek dismissal of the §271(e)(2)(A) counts against the '001 and '424 patents.

Also on August 3, 2010, Nycomed filed the same motion to dismiss in the Delaware action as filed in the New York action.  Nycomed also filed the instant motion to transfer the Delaware action to New York.  Nycomed did not answer the Delaware complaint.

On December 15, 2010, Medicis filed and served a second complaint in Delaware against Nycomed for infringement of the '738 patent. In the second Delaware complaint, Medicis included similar counts for infringement under §§271(e)(2)(A) and (a)-(c) as were included in the first Delaware complaint.

## V.   <u>ARGUMENT</u>

Under 28 U.S.C. §1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). *See also Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995). "In determining whether to transfer a case pursuant to §1404(a), courts in the Third Circuit apply the public and private interest factors outlined in [*Jumara*]." *Pfizer Inc. v. Sandoz Inc.*, 2010 WL 256548, at *3 (D. Del. Jan. 20, 2010). "Courts consider the following private interests: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records, again, only to the extent that they may not be available in one of the fora." *Id.* "Courts consider the following public interests: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law." *Id.* A transfer should be denied "if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Id.*

The private and public factors to be addressed on a motion to transfer weigh heavily in favor of Medicis. Nycomed essentially ignores these factors and, instead, argues that Medicis is not entitled to its choice of forum because it filed a protective action in New York. Nycomed is wrong. The filing of a protective action has been endorsed by several courts, including this one,

6

as a prudent measure in Hatch Waxman cases.  It does not disturb Medicis' right to choose its forum.  Further, the few arguments that Nycomed does make concerning the private and public factors do not even come close to shifting the balance in favor of New York.

### A.    Medicis' Choice of Forum Is Paramount

"Generally, a plaintiff's choice of forum is entitled to 'paramount' consideration,' and should not be lightly disturbed."  *Pfizer.*, 2010 WL 256548, at *3; *see also In re Cyclobenzaprine*, 693 F. Supp. 2d 409, 421 (D. Del. 2010) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed.") (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).  "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail."  *Oracle Corp. v. EpicRealm Licensing, LP*, Nos. 06-414, -495-SLR, 2007 U.S. Dist. LEXIS 21095, at *7 (D. Del. Mar. 26, 2007).

Here, there is no reason to alter the general rule that the plaintiff, Medicis, is entitled to its choice of forum.  First, Medicis should not lose the right to choose its forum merely because it took the prudent measure of filing a protective action in New York.  Second, the Delaware suit is the first-filed action and, therefore, takes precedence over the New York action.  Finally, none of Nycomed's other arguments holds any weight.

### 1.    The New York Action Is a Protective Suit and Should Not Deprive Medicis of Its Choice of Forum

The United States Supreme Court has recognized that, in certain instances, the filing of a "protective suit" is necessary and appropriate to preserve the interests of the plaintiff.  *See Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 294 n.9 (2005) ("There is nothing necessarily inappropriate . . . about filing a protective action.").  In cases involving statutes of limitations, for example, courts have recognized that a plaintiff may need to protect itself by filing two lawsuits

if it expects the defendant to challenge personal jurisdiction in the preferred forum. *See, e.g.,*
*Union Pacific R. Co. v. Dep't of Revenue*, 920 F.2d 581, 584 and n.9 (9th Cir. 1990)
(recognizing that the railroad company had filed protective actions in state court to prevent
expiration of the state statute of limitations).

Hatch Waxman litigation is no different.  Given the ambiguity in establishing personal
jurisdiction in some instances, plaintiffs in Hatch Waxman cases are well-advised to file
protective suits.  Indeed, the practice of filing protective suits in Hatch Waxman cases has
become commonplace and has been endorsed by several courts, including this one. *See Pfizer*
*vs. Sandoz*, 2010 WL 256548, at *3; *In re Cyclobenzaprine*, 693 F. Supp. 2d 409, 422 n.19 (D.
Del. 2010); *Pfizer. v. Apotex*, 640 F. Supp. 2d at 1010; *Abbott Labs. v. Mylan Pharms., Inc.*,
2006 WL 850916 at *8 (N.D. Ill. Mar. 28, 2006).

For example, in *Abbot Labs*, the Court faced the same situation as here.  After receiving
notice of Sandoz' ANDA seeking approval to market and sell a generic version of the drug
Depakote®, plaintiff Abbott filed suit in the Northern District of Illinois as well as a protective
suit in the Northern District of West Virginia, where defendant Mylan had its corporate
headquarters.  Making the same arguments as Nycomed makes here, Mylan moved to transfer
pursuant to 28 U.S.C. §1404.  The Court denied the motion.  Although the court did not need to
reach the issue, it recognized the dilemma faced by Hatch Waxman plaintiffs:

> [T]he Court cannot fault Abbott for its litigation strategy in the
> face of an ambiguous statute that remains devoid of court
> interpretation.  Abbott does not seek double recovery or have any
> desire to litigate parallel suits, and has requested a stay in the suit
> pending in the Northern District of West Virginia.  Patent holders
> have a strict statutory 45-day window in which to file suit after the
> patent holder receives notice that a generic company has filed an
> ANDA.  The statute is silent, and the courts have not clarified,
> whether the patent holder loses its right to sue for patent
> infringement in the event its suit is dismissed for lack of personal

jurisdiction after the 45-day period has expired . . . <u>Therefore, patent holders are stuck between a jurisdictional rock and hard place: file suit in the forum of choice but risk losing patent protection if the suit is dismissed for personal jurisdiction, or file suit in the only known safe forum and incur all the inconvenience of litigating the matter in a distant location.</u>

*Abbott Labs.*, 2006 WL 850916, at *8 (emphasis added).

In a subsequent case, the same Court again recognized the need for filing protective suits "in view of the apparent conundrum that parties in Pfizer's position otherwise may face." *Pfizer vs. Apotex*, 640 F. Supp. 2d at 1010. Further, "[c]ourts in factually similar cases have likewise refused to find 'bad faith or forum shopping on the part of Plaintiff' where 'Plaintiff filed the duplicative actions only because of the extraordinary time limit placed on the filing of suits under the Hatch-Waxman Act' and Plaintiff's belief 'that Defendant would challenge personal jurisdiction in Plaintiff's preferred forum.'" *Id.* at 1010 n.4.

Facing the same situation, this Court has followed *Abbott Labs* and *Apotex*. For example, in *Pfizer v. Sandoz*, after receiving notice of Sandoz' ANDA seeking approval for a generic version of the drug Caduet®, Pfizer filed suit in Delaware as well as a protective suit in Colorado, where Sandoz was incorporated and had its largest manufacturing facility. Denying Sandoz' motion to transfer, the Court discussed the dilemma faced by Hatch Waxman plaintiffs:

> The statute is silent on whether a patent holder loses its right to sue if its suit is dismissed for lack of personal jurisdiction after the 45-day window has expired. Thus, at least one court has recognized that the ambiguities in the Hatch-Waxman Act put patent holders "between a jurisdictional rock and a hard place: file suit in the forum of choice but risk losing patent protection if the suit is dismissed for personal jurisdiction, or file suit in the only known safe forum . . ." *Abbott Labs.*, 2006 WL 850916, at *8. As a result, patent holders are apparently filing "protective" ANDA suits with increasing frequency. *See id.* Such is the case here, where Plaintiffs filed the Delaware Action and the "protective" Colorado Action a day later.

*Pfizer vs. Sandoz*, 2010 WL 256548, at *3. Further, the Court confirmed that "[n]umerous courts have declined to find that a plaintiff acts in bad faith or engages in forum shopping when it files a protective suit against an ANDA filer." *Id.* at *3.

Likewise, in *Cyclobenzaprine*, the brand name company filed suit in Delaware as well as two protective suits in the Central District of California. Denying the defendant's motion to transfer under §1404, this Court again explained:

> With respect to the "strict 45-day window in which to file suit," the Hatch-Waxman Act is "silent as to whether the patent holder loses its right to sue for patent infringement in the event its suit is dismissed for lack of personal jurisdiction after the 45-day period has expired." The Court will not infer that plaintiffs have made a "choice" as to venue when prudence counsels the need for such protective measures to preserve rights in light of an ambiguous statute.

*In re Cyclobenzaprine*, 693 F. Supp. 2d at 422 n.19.

Like *Sandoz* and *Cyclobenzaprine*, this Court should deny Nycomed's motion to transfer under §1404. After receiving notice of Nycomed's ANDA, Medicis filed the Delaware action within the 45-day period dictated by the Hatch Waxman Act. Anticipating that Nycomed might contest personal jurisdiction in Delaware, Medicis filed a second protective action in the Southern District of New York. Medicis, however, never served the New York complaint. Instead, Medicis intended the New York action to serve as a "placeholder" until Nycomed responded to the complaint in the Delaware action, and Medicis was able to determine whether Nycomed would challenge personal jurisdiction. Now that Nycomed has consented to personal jurisdiction in the Delaware action, this case is ready to proceed. If this Court denies Nycomed's motion to transfer, Medicis will move to dismiss the New York action immediately.

In its brief, Nycomed repeatedly disparages Medicis by accusing it of "gamesmanship" and "forum shopping." Further, Nycomed states that it has "requested several times" that

Medicis voluntarily withdraw the Delaware action in favor of the New York action, and that "Medicis has refused to offer any justification for its duplicative actions." (Nycomed Br., D.I. 7, at 5). This hyperbole is <u>a complete misstatement of the factual record.</u>

In fact, it is Nycomed that is playing games. Before responding to either complaint, counsel for Nycomed contacted counsel for Medicis concerning the filing of two actions. (*See* Exhibit 1, attached hereto). In that email, counsel for Nycomed requested that Medicis "dismiss one of the suits . . . filed in New York or Delaware." (*Id.*). Counsel for Medicis responded that Medicis would withdraw the New York complaint "if Nycomed will agree to consent to jurisdiction in Delaware." (*Id.*). Nycomed, however, never responded. Instead, Nycomed answered the New York complaint even though it had never been served. Because the complaints in both actions are identical, there was no reason for Nycomed to answer in one jurisdiction and not the other. The only explanation for this maneuver is that Nycomed was attempting to set up an argument that the New York action is further along than the Delaware action. Indeed, that is exactly the argument Nycomed makes in its pending motion:

> Earlier today, on August 3, 2010, Nycomed answered the New York complaint and counterclaimed for declaratory judgments of non-infringement, unenforceability and invalidity of the patents-in-suit. The New York action is underway.

(Nycomed Br., D.I. 7, at 5).

Nycomed's preemptive filing in New York is an attempt to usurp Medicis' right to choose its forum. There is no reason that Hatch Waxman plaintiffs should be deprived of their fundamental right merely because of an ambiguity in the statute. Allowing Nycomed to dictate the forum for this litigation by expediting the proceedings in the second-filed forum and delaying the proceedings in the first-filed forum grossly distorts the balance of rights under the Hatch

Waxman Act. Furthermore, it offends traditional notions of deference to the plaintiff's choice of forum and the first to file rule.

Contrary to Nycomed's assertions, this is not a case where Medicis is playing games in an attempt to slow down this litigation. Delaware is an appropriate venue because Medicis is incorporated in Delaware. *See Boston Scientific Corp. v. Johnson & Johnson Inc.*, 532 F. Supp. 2d 648, 655 (D. Del. 2008) ("[A] corporation's decision to incorporate in a particular state is a rational and legitimate reason to litigate in that state."). Further, Medicis sells Vanos® in Delaware, Nycomed is subject to personal jurisdiction in Delaware, and Medicis has reason to believe that, if released before the expiration of the '001, '424, '422, and '738 patents, Nycomed's generic product will infringe Medicis' patents in Delaware. Medicis' filing of a second protective action in the Southern District of New York was an appropriate precautionary measure in the context of the Hatch Waxman Act and should not be interpreted as a concession to litigate in Nycomed's preferred forum. If Nycomed truly wishes to expedite this litigation – as it is required to do under the Hatch Waxman Act – it should readily agree to dismiss the New York action and proceed here. By doing so, Nycomed will avoid the unnecessary delay of a preliminary procedural battle in both forums.

**2.    The Delaware Action Takes Precedence Under the First-Filed Rule**

The "first-filed rule" provides that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *EEOC v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir. 1988). "Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances." *Corixa Corp. v. IDEC Pharm. Corp.*, No. 01-615-GMS, 2002 U.S. Dist. LEXIS 2980, at *4 (D. Del. Feb. 25, 2002). The rule "encourages sound judicial

administration and promotes comity among federal courts of equal rank." *EEOC*, 850 F.2d at 971. It also spares courts from having "'to duplicate each other's work involving the same issue and the same parties.'" *Chase Manhattan Bank v. Freedom Card Inc.*, 265 F. Supp. 2d 445, 448 (D. Del. 2003) (quoting *Crosley Corp. v. Hazeltine Corp*., 122 F.2d 925, 929 (3d Cir. 1941)) (Jordan, J.).

Here, the Delaware action is the first-filed case, and Nycomed has identified no extraordinary circumstances that would preclude the application of the first-to-file rule. Medicis has not attempted to delay by filing two identical actions. Medicis prefers to litigate this action in Delaware and would like the action to move forward expeditiously in this forum. Indeed, Medicis served Nycomed with the Delaware complaint, but not the New York complaint, so that the Delaware action could move forward first. Any delay preventing the Delaware action from moving forward thus far is necessarily the fault of Nycomed.

### 3. None of Nycomed's Other Arguments Trumps Medicis' Right to Choose Its Forum

Nycomed argues that "any deference that might be owed to [Medicis'] choice of forum is limited by the 'strong policy favoring the litigation of related claims before the same tribunal.'" (Nycomed Br. at 15). As an initial matter, Medicis has no intention of litigating this matter in both New York and Delaware. Now that Nycomed has consented to personal jurisdiction in Delaware, the New York Action can be stayed or dismissed.

Furthermore, the cases on which Nycomed relies in support of its argument are readily distinguishable. All of those cases involving "parallel proceedings." That is not the situation here. For example, Nycomed relies on a group of cases in which the first-filed action was pending well-before the second-filed action. *See CIBC World Markets, Inc. v. Deutsche Bank Securities, Inc.*, 309 F. Supp. 2d 637 (D.N.J. 2004) (transferring securities fraud action to

Minnesota where multiple related cases were initiated one to two years earlier and the "Minnesota court [had] already expended significant effort in familiarizing itself with the case's highly complex factual background . . . ."); *Crackau v. Lucent Techs.*, 2003 WL 22927231 (D.N.J. 2003) (transferring class action where "substantively identical" class action was filed months earlier in Texas). In another set of cases that Nycomed cites, the defendant in the first-filed action initiated a second litigation in a different venue, and the plaintiff in the first-filed action moved to transfer and consolidate. *See Smithkline Corp. v. Sterling Drug, Inc.*, 406 F. Supp. 52 (D. Del. 1975) (transferring case where Smithkline filed second suit in Delaware one month after Sterling filed first suit in Pennsylvania); *Ballard Med. Prods. v. Concord Labs., Inc.*, 700 F. Supp. 796 (D. Del. 1988) (transferring case where Ballard filed suit in Delaware four months after Concord filed suit in New Hampshire). Neither of these scenarios is applicable to the facts here.

### B. The Private and Public Factors Weigh Heavily in Favor of Delaware

The convenience of the parties and witnesses also do not favor transfer. This factor may only be considered "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Boston Scientific*, 532 F. Supp. 2d at 654. Likewise, the availability of evidence is a factor "similarly limited to the extent that [it cannot] be produced in the alternative forum." *Id.* Here, Nycomed has not identified a single witness that will be unavailable for trial in Delaware. And Nycomed does not contend that there is evidence that can be produced in New York, but not Delaware.

Further, Nycomed's argument that this case "arose" in New York rings hollow. This case is premised on Nycomed's infringement under §271(e)(2). This artificial act of infringement

was created in order to further the purpose of the Hatch Waxman Act.  It matters little where the preparation and filing of the ANDA took place.

Finally, the '738 action is pending only in Delaware.  Even if this action were transferred to New York, the '738 case will proceed in this Court.  Allowing both cases to remain in Delaware will conserve judicial and party resources.  Both courts will avoid duplicative efforts to become familiar with the science and technology of the patents-in-suit.  The parties will avoid the need for duplicative discovery and motion practice.  And the Courts and the parties will avoid the need for two trials and the possibility of inconsistent rulings.

## VI.    CONCLUSION

Nycomed has failed to identify any factor that weighs in favor of transferring this action to the Southern District of New York.  Accordingly, Nycomed's Motion to Transfer should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*

_____

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com

*Attorneys for Medicis Pharmaceutical Corporation*

OF COUNSEL:

Andrew M. Berdon
Robert B. Wilson
James E. Baker
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue – 22nd Floor
New York, NY  10010-1601
(212) 849-7000

December 15, 2010
3958686

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

> Jeffrey L. Moyer, Esquire
> Jason J. Rawnsley, Esquire
> RICHARDS, LAYTON & FINGER

I further certify that I caused copies of the foregoing document to be served on December 15, 2010, upon the following in the manner indicated:

Jeffrey L. Moyer, Esquire                    *VIA ELECTRONIC MAIL*
Jason J. Rawnsley, Esquire
RICHARDS, LAYTON & FINGER
One Rodney Square
920 North King Street
Wilmington, DE 19801

Donald L. Rhoads, Esquire                    *VIA ELECTRONIC MAIL*
Christopher A. Colvin, Esquire
Albert B. Chen, Esquire
Marcus A. Colucci, Esquire
Geoffrey G. Hu, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036

*/s/ Karen Jacobs Louden*

_____
Karen Jacobs Louden (#2881)